```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
                                                             :
UNITED STATES OF AMERICA AND THE                             :
STATE OF NEW YORK, ex rel. PAUL                              :
BACKER,                                                      :         17 Civ. 2708 (LGS)
                                    Plaintiffs,              :
                                                             :         OPINION AND ORDER
                      -against-                              :
                                                             :
COOPERATIEVE BANK U.A., et al.,                              :
                                                             :
                                    Defendants.              :
------------------------------------------------------------ X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 10/30/2019

LORNA G. SCHOFIELD, District Judge:

Pro se Plaintiff Paul Backer ("Relator") brings this action under the *qui tam* provisions of the False Claims Act ("FCA"), 31 U.S.C. §§ 3729-33, on behalf of the United States of America and the State of New York (collectively, "the Government"). The Government moves to dismiss the Complaint pursuant to 31 U.S.C. § 3730(c)(2)(A) of the FCA. Relator opposes dismissal. For the reasons below, the motion is granted.

**I.    BACKGROUND**

The facts alleged in the Complaint are assumed to be true for purposes of this motion. *See Doe v. Columbia Univ.*, 831 F.3d 46, 48 (2d Cir. 2016).

Relator's Complaint, filed on April 14, 2017, names forty Defendants, including Cooperatieve Rabobank U.A. ("Rabobank"); four Rabobank-affiliated corporate entities; twenty-four current and former Rabobank executives and board members; nine current and former "John and Jane Doe Defendants" whose identity is not readily discoverable; and Rabobank's law firm, Milbank, Tweed, Hadley & McCloy, LLP, and David R. Gelfand, a partner at the firm.

The Complaint alleges that the Department of Justice ("DOJ") should have extracted a greater monetary penalty from Rabobank when they entered into a Deferred Prosecution

Agreement in 2014 ("2014 DPA"), following a DOJ investigation regarding allegations that Rabobank fraudulently manipulated benchmark interest rates for the London Interbank Offered Rate and the Euro Interbank Offered Rate.  In its agreement with Rabobank, the DOJ considered the fact that "Rabobank ha[d] no history of similar misconduct and ha[d] not been the subject of any criminal enforcement actions by [the DOJ] or any authority in the Netherlands or elsewhere, or any significant regulatory enforcement actions by any authority in the United States, the Netherlands, or elsewhere."  Rabobank paid approximately $800 million in penalties under the 2014 DPA.

The Complaint alleges that -- but for Defendants' fraudulent concealment of material facts, and presenting knowingly false, incomplete and intentionally misleading information during the course of negotiating the DPA -- the penalty paid by Rabobank should have been "at least" $800 million to the Commodity Futures Trading Commission, $775 million to the DOJ and $600 million to the New York State Department of Financial Services.  Specifically, the Complaint alleges that Rabobank fraudulently withheld information related to other former and on-going investigations of tax fraud, money laundering and other alleged wrongdoings.

The Complaint requests that the Government intervene to prosecute Defendants for "ongoing, concerted illegal action for profit targeting the U.S.," that the DOJ rescind the 2014 DPA and that Rabobank "be debarred from participating in licensed activity on U.S. markets." The Complaint seeks damages "for the maximum amount pursuant to the federal False Claims Act," including reasonable expenses, legal fees and costs and indicates that Relator "will donate proceeds from this litigation to fund non-profit efforts to promote investor rights, corporate governance and accountability."

After the Complaint was filed in April 2017, the Government initially had sixty days under the FCA -- while the Complaint remained under seal -- to determine whether to intervene or dismiss this case. *See* 31 U.S.C. § 3730(b)(2). Following the expiration of the sixty-day period, the Court granted five Government motions, for good cause, to keep the Complaint sealed while the Government considered whether to intervene or dismiss. *See* 31 U.S.C. § 3730(b)(3). On August 2, 2018, the Court ordered that "the complaint, orders, and all other documents related to this case shall remain under seal until further order of this Court." The Court held a pre-motion conference on September 13, 2018, to discuss the Government's forthcoming motion to dismiss. The motion was filed on October 15, 2018. Relator filed his opposition on December 7, 2018, and the Government filed its reply on December 19, 2018. At no time has the Government sought to intervene on Relator's behalf. On October 2, 2019, Judge Parker granted Relator's motion to unseal his *qui tam* complaint and all litigation documents not filed *ex parte*, and directed Relator to serve the Complaint and a copy of the order on Defendants within 30 days. Judge Parker stayed Defendants' obligation to answer or move in response to the Complaint until after the motion to dismiss was decided.

## II.     DISCUSSION

### A.     The False Claims Act

The FCA imposes civil penalties and treble damages on any person who "knowingly presents, or causes to be presented, [to the Government] a false or fraudulent claim for payment or approval." 31 U.S.C. § 3729(a)(1)(A). A private person, known as a "relator," can bring a *qui*

*tam* suit on behalf of the Government to enforce the FCA, and then share in any recovery.[1]  31 U.S.C. § 3730(b); *see United States ex rel. Wood v. Allergan, Inc.*, 899 F.3d 163, 166 (2d Cir. 2018).

Before the expiration of the sixty-day sealing period or a longer period pursuant to any extensions obtained by the Government, *see* 31 U.S.C. § 3730(b)(2)-(3), the Government must "(A) proceed with the action, in which the case shall be conducted by the Government; or (B) notify the court that it declines to take over the action, in which case the person bringing the action shall have the right to conduct the action."  31 U.S.C. § 3730(b)(4).  The relator has a right to continue as a party to the action, but the Government acquires the "primary responsibility for prosecuting the action."  31 U.S.C. § 3730(c)(1); *see also Vt. Agency of Nat. Res. v. United States ex rel. Stevens*, 529 U.S. 765, 772-74 (2000) (noting that, although they have standing as "partial assignee[s]" of the Government's damages claim, relators bring suit on behalf of the Government, to redress injuries suffered by the Government, not their own).  If the Government decides not to intervene, it may move to dismiss the suit, provided that the Government notifies the relator of the motion and the court provides the relator with an opportunity for a hearing on the motion.  31 U.S.C. § 3730(c)(2)(A); *see United States ex rel. Amico v. Citigroup, Inc.*, No. 14 Civ. 4370, 2015 WL 13814187, at *3 (S.D.N.Y. Aug. 7, 2015).

---

[1] "Although the False Claims Act does not specifically address whether private parties may bring *qui tam* actions *pro se*," the Second Circuit has held that private parties, who are not themselves lawyers, cannot proceed pro se in FCA *qui tam* claims.  *See United States ex rel. Mergent Servs. v. Flaherty*, 540 F.3d 89, 92-93 (2d Cir. 2008).  Here, Plaintiff proceeds *pro se* and does not specifically assert to be a lawyer anywhere in the record.  However, the Government has not moved for dismissal on this basis, and previously filed litigation indicates that Plaintiff is a lawyer.  *See Backer v. USD 30 Billion MTN Programme*, No. 16 Civ. 6577, 2017 WL 6387732, at *1 (S.D.N.Y. Sept. 30, 2017) ("Plaintiff is a 'U.S. national' and a lawyer").

B.     **Dismissal Under § 3730(c)(2)(A)**

The Government's motion to dismiss is granted as it is supported by a valid governmental purpose that is not arbitrary or irrational and has some rational relation to the dismissal and thus meets the standard for dismissal under § 3730(c)(2)(A).

The Second Circuit has not held what standard applies to a § 3730(c)(2)(A) motion to dismiss, but did note, citing the Ninth Circuit, that "the court need not, in order to dismiss, determine that the government's decision is reasonable." *See United States ex rel. Stevens v. Vt. Agency of Nat. Res.*, 162 F.3d 195, 201 (2d Cir. 1998) (citing *United States ex rel. Sequoia Orange Co. v. Baird-Neece Packing Corp.*, 151 F.3d 1139, 1145 (9th Cir. 1998)), *rev'd on other grounds*, 529 U.S. 765.  The Second Circuit then quoted *Sequoia* parenthetically for the proposition that "in light of Separation of Powers concerns, [the] district court need find only that the government's decision to dismiss a *qui tam* suit, even a meritorious one, is supported by a 'valid governmental purpose' that is not arbitrary or irrational and has some 'rational relation' to the dismissal." *Id*.  The Ninth Circuit further stated in *Sequoia* that, if the Government satisfies this test, the burden switches to the relator "to demonstrate that dismissal is fraudulent, arbitrary and capricious, or illegal." *Sequoia,* 151 F.3d at 1145 (internal quotation marks omitted).  The Tenth Circuit has adopted the same test.  *See Ridenour v. Kaiser-Hill Co.*, 397 F.3d 925, 936 (10th Cir. 2005).  Any dismissal that meets the *Sequoia* test necessarily meets the D.C. Circuit standard, which recognizes that the Government has an "unfettered right to dismiss" under § 3730(c)(2)(A), except that a court may deny dismissal when there is "fraud on the court."  *See Swift v. United States*, 318 F.3d 250, 252-53 (D.C. Cir. 2003).

The Court adopts the *Sequoia* standard, following the suggestion of the Second Circuit in *Stevens*.  Dismissal here is appropriate under that standard because the Government has

identified valid purposes supporting dismissal and a rational relationship between dismissal and accomplishment of the purposes.  The Government persuasively argues that, if continued, the litigation will require considerable governmental resources to address the scope of discovery requests and, should any discovery be allowed, to respond to document requests and to defend depositions.  *See Sequoia*, 151 F.3d at 1146 (holding that "[t]he district court . . . properly noted that the government can legitimately consider the burden imposed on the taxpayers by its litigation").  Dismissing Relator's claim is rationally related to the objective of conserving governmental resources.  *See United States ex rel. Borzilleri v. AbbVie, Inc.*, No. 15 Civ. 7881, 2019 WL 3203000, at *2 (S.D.N.Y. July 16, 2019) (dismissing relator's claim under *Sequoia* where the government identified "at least one" valid purpose for dismissal, specifically the imposition of "substantial burdens on government resources" by having to monitor litigation and coordinate third-party discovery); *Citigroup, Inc.*, 2015 WL 13814187, at *4 (dismissing relator's claim under *Sequoia*, in part, to "avoid[] the monetary and human capital costs" that litigation would entail).

     Dismissal is also rationally related to another valid purpose proffered by the Government: deterring parasitic and opportunistic litigation, particularly where, as here, Relator's allegations are based largely on information from public enforcement actions brought by the Government both before and after the 2014 DPA.  *See United States ex rel. Doe v. John Doe Corp.*, 960 F.2d 318, 321 (2d Cir. 1992) (identifying -- as a valid purpose for government dismissal -- "parasitic" FCA claims based on public information that do not seriously contribute to disclosure of fraud).  This purpose further justifies dismissal where the Government has already expended considerable resources in its multi-year, fraud-based investigation of Rabobank and negotiation of the 2014 DPA, and where Relator requests, in essence, that similar investigations occur again.

*See Citigroup, Inc.*, 2015 WL 13814187, at *4 (dismissing relator's claim under *Sequoia*, in part, because of the asserted interest of ending "duplicative" litigation based on previously settled claims); *United States ex rel. Piacentile v. Amgen Inc.*, No. 04 Civ. 3983, 2013 WL 5460640, at *3 (E.D.N.Y. Sept. 30, 2013) (recognizing the government's stated preference of avoiding expending further resources on a *qui tam* action, particularly after a separate eight-year investigation and substantial settlement).

As the Government has shown a rational purpose to be achieved by dismissal, the burden shifts to the Relator "to demonstrate that dismissal is fraudulent, arbitrary and capricious, or illegal." *Sequoia,* 151 F.3d at 1145.  Relator has not met this burden.  Relator objects that the U.S. Attorney's Office did not sufficiently investigate his claims and evidence.  Even assuming the truth of this assertion (which appears to be based only on surmise and Relator's own limited contacts with the Government), it does not rise to the level of showing that dismissal is fraudulent, arbitrary and capricious, or illegal.  *See AbbVie, Inc.*, 2019 WL 3203000, at *2 (granting the government's motion to dismiss, in part, because relator's arguments about the government's investigative choices did not sufficiently show how they were fraudulent, arbitrary and capricious, or illegal).  Accordingly, the Government's motion to dismiss this action is warranted under the standard in *Sequoia,* and the less demanding standard in *Swift*.

Finally, Relator contends that he is entitled to a hearing on the Government's motion to dismiss under the 31 U.S.C. § 3730(c)(2)(A).  The pre-motion conference and Relator's presentation of written arguments in opposition to the motion satisfy that statutory requirement. *See Greene v. I.R.S.*, No. 08 Civ. 0280, 2008 WL 5378120, at *2 (N.D.N.Y. Dec. 23, 2008), *aff'd*, 348 F. App'x 625 (2d Cir. 2009) (concluding that consideration of the arguments raised in relators' opposition -- not required by the FCA -- provided sufficient opportunity to be heard on

the government's motion to dismiss the *qui tam* claim); *United States ex rel. Pentagen Techs. Int'l Ltd. v. United States*, No. 00 Civ. 6167, 2001 WL 770940, at *7 n.13 (S.D.N.Y. July 10, 2001) (concluding, in the alternative, that consideration of relators' arguments in their opposition provided sufficient opportunity to be heard under the FCA).   Moreover, nothing in Relator's opposition raises a factual or legal issue that necessitates a further hearing to be resolved.  *See AbbVie, Inc.*, 2019 WL 3203000, at *3 (concluding, under *Sequoia*, that relator was not entitled to a discovery or evidentiary hearing on the government's motion where his allegations "d[id] not rise above the level of speculation").

### III.  CONCLUSION

For the foregoing reasons, the Government's motion to dismiss the Complaint is GRANTED.

The Clerk of Court is respectfully directed to mail a copy of this order to the pro se Plaintiff and close this case.

Dated: October 30, 2019
   New York, New York

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE

8